## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| DEBRA LAUDERDALE | § | |
| | § | |
| v. | § | No. 6:05-cv-372 |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| CRIMINAL JUSTICE | § | |
| INSTITUTIONAL DIVISION AND | § | |
| RODRICK D. ARTHUR | § | |

## <u>MEMORANDUM OPINION AND FINAL ORDER</u>

Before the Court is Defendant Rodrick Arthur's Motion for Summary Judgment Based on Qualified Immunity (Doc. #28), Plaintiff's opposition (Doc. #30), and Defendant Arthur's reply (Doc. #33), which also contains Defendant Arthur's objections to Plaintiff's response.  Also before this Court is  Motion for Summary Judgment of Co-Defendant, Texas Department of Criminal Justice Institutional Division ("TDCJ") (Doc. #29), Plaintiff's opposition (Doc. #31), and Defendant TDCJ's reply (Doc. #35).[1]  Based on the parties' filings and the applicable law, the Court rules as follows.

---

[1]Defendant TDCJ also filed Objections to Plaintiff's Evidence Proffered in Response to Defendant Texas Department of Criminal Justice's Motion for Summary Judgment and Motion to Strike (Doc. #37) to which Plaintiff responded (Doc. #41).  Because the Court rules in favor of Defendant TDCJ even without considering Defendant TDCJ's objections and motion to strike, the Court need not make a ruling on them.

# I.    BACKGROUND

Plaintiff Debra Lauderdale was a correctional officer employed by TDCJ at its Coffield Unit in Tennessee Colony, Texas, from June 3, 2004, until her resignation on December 3, 2004.  Her last day of work was on October 25, 2004.  Defendant Rodrick Arthur was a Captain at the Coffield Unit and was Acting Warden on the night shift.  On her first day of work, Plaintiff received and signed for "PD-13," TDCJ's policy prohibiting sexually harassing and other offensive workplace conduct.  Plaintiff also received and signed for a copy of the TDCJ Code of Ethics which states that she would not "sexually harass or condone sexual harassment against any person."  A "New Employee Document Receipt" also indicates that Plaintiff received the Executive Director's Statement on Sexual Harassment and viewed the EEO[2] training video.

Plaintiff alleges that around the end of July 2004, Defendant Arthur began harassing her.  Plaintiff claims that during the next three months she worked at the TDCJ, Defendant Arthur called her an average of 10-15 times per night while she was on duty.  According to Plaintiff, Defendant Arthur asked her out for coffee and

---

[2]The EEO is a section within TDCJ's Human Resources Division, Employee Relations Department, that is responsible for (1) accepting complaints regarding alleged violations of the Agency's policies that prohibit discrimination based on race, color, religion, sex (includes a complaint alleging sexual harassment or discourteous conduct of a sexual nature), national origin, age, disability, genetic information or due to retaliation; and (2) investigation of such complaints.

repeatedly asked her out on dates.  He also allegedly told her that he loved her, that she was beautiful and that he would kill himself if he found out she was married. Defendant Arthur also asked Plaintiff to go to Las Vegas with him to "snuggle."

During this period of time, Plaintiff says she only complained once.  After Defendant Arthur asked Plaintiff out for coffee, Plaintiff told Sergent Kroll, a supervisor at the Coffield Unit, that Defendant Arthur had been calling her and asking her out.  Sergent Kroll told her that if she spoke to the warden about it, she should "leave him out of it."  The only physical contact Plaintiff alleges was when Defendant Arthur grabbed the handcuff case on the belt she was wearing and  pulled her towards him.  As soon as their bodies touched, Plaintiff jerked away.

On what turned out to be Plaintiff's last day of work at the TDCJ, Defendant Arthur "sent for" her.  Believing that Defendant Arthur had no proper business with her, Plaintiff did not go to see him and never returned to work.  Six weeks later, on December 3, 2004, Plaintiff officially resigned from TDCJ.  It was on this day that Plaintiff submitted a formal complaint to the TDCJ human resources department stating that Defendant Arthur had harassed her.  The TDCJ subsequently investigated Plaintiff's complaint and disciplined Defendant Arthur for "discourteous conduct of

a sexual nature"[3] when he "subjected Officer Debra Lauderdale to persistent requests for dates."[4]

For the alleged sexual harassment, Plaintiff sues the TDCJ under Title VII, 42 U.S.C. § 2000e *et seq.* and Defendant Arthur under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Plaintiff also sues Defendant Arthur for assault and battery under Texas state law.

## II.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A fact is "material" if it might

---

[3] The TDCJ's Executive Director defines discourteous conduct as:
> Any conduct (words or actions) of a sexual nature toward another employee of the Agency or other individual that: (a) a reasonable person would find offensive; or (b) is unwelcome to the person to whom such conduct is directed and that person has communicated (by words or actions) to the other person that the conduct is unwelcome.

[4] The Court notes that the fact that the TDCJ disciplined Defendant Arthur for discourteous conduct of a sexual nature does not in itself create a *prima facie* case of liability for sexual harassment under Title VII or Section 1983.  The Court must look to the applicable law and the cases interpreting the law to determine if the Plaintiff has presented a *prima facie* case of sexual harassment.

4

affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods, Inc.*, 164 F.3d 957, 961 (5th Cir. 1999) (internal citations omitted) . Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. When ruling on a motion for summary judgment, the Court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. The party seeking summary judgment bears the initial burden of demonstrating the lack of a genuine issue of material fact. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the moving party "fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.* If the movant meets its burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson*, 477 U.S. at 250; *EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042,1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied

by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 585; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

## III.   DISCUSSION

### A.   Title VII Claim Against TDCJ

Under Title VII of the Civil Rights Act of 1964, "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of . . . sex." 42 U.S.C. § 2000e-2(a)(1) (2001). A plaintiff can establish a violation of Title VII by demonstrating a hostile work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993). Under Fifth Circuit precedent, a Plaintiff can establish a *prima facie* case of a hostile work environment by producing evidence that (i) the employee belongs to a protected class; (ii) the employee was subject to unwelcome sexual harassment; (iii) the harassment was based on sex; (iv) the harassment affected a "term, condition or privilege of the employment;" and (v) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Shepherd v. Comptroller of Pub.* Accounts, 168 F.3d 871, 873 (5th Cir. 1999). In its motion for summary judgment, Defendant TDCJ does not challenge the first three elements. Therefore the Court focuses on the fourth element: whether

6

the harassment affected a "term, condition or privilege of the employment."

The Supreme Court has held that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).  Defendant TDCJ alleges that the harassment was not severe or pervasive enough to create an abusive working environment.  To determine if harassment is severe or pervasive, the Court looks at several factors, although no single factor is determinative, including: (1) the frequency of the harassment; (2) the severity of the harassment; (3) whether the conduct was physically threatening or humiliating or merely an offensive utterance; (4) whether the harassment unreasonably interfered with the victim's work performance, *Harris*, 510 U.S. at 23; and (5) whether the harassment undermined the victim's workplace competence.  *Butler v. Ysleta Independent School Dist.*, 161 F.3d 263, 270 (5th Cir. 1998).

Taking Plaintiff's allegations as true, the first question is whether the alleged harassment was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment.  To do this, Plaintiff must present evidence of an objectively and subjectively abusive work environment.  *Harris*, 510 U.S. at 21-22.

Numerous courts have rejected hostile work environment claims as a matter of

law and a survey of these cases reveal allegations of sexual harassment more disturbing than those alleged here. *See, e.g., Hockman v. Westward Commc'n, L.L.C.*, 122 F.Appx. 734 (5th Cir. 2004) (finding that a co-worker commenting to plaintiff about another employee's body, slapping plaintiff on the behind with a newspaper, grabbing or brushing up against the plaintiff's breasts and behind, and attempting to kiss the plaintiff were not severe as a matter of law)*; Shepherd* 168 F.3d at 874-75 (finding that several inappropriate comments, including "your elbows are the same color as your nipples," and touchings, including the rubbing of hands down plaintiff's arm from her shoulder to her wrist, over a of two year period, were "boorish and offensive" but were not objectively severe or pervasive enough to constitute actionable sexual harassment); *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (finding conduct that included attempting to kiss the plaintiff three times, several incidents of unwanted touching, placing "I love you" signs in her work area and asking her out on dates were not sufficient for actionable harassment); *Jones v. Seago Manor Nursing Home*, 2002 WL 31051027, at *1, 4 (N.D. Tex. Sept. 11, 2002) (stating that allegations of a supervisor telling plaintiff "[y]ou know, if I stick [my penis] in you, you'll say computer right" and "[o]oh, girl, I could stick this long [expletive deleted] in you and you [sic] go tell your husband that you'll leave him for a white man, touching the plaintiff's buttocks and remarking that "[it] must be jelly

8

because jam [does not] shake like that," and grabbing his crotch were not the types of extreme conduct necessary to establish a hostile work environment).

Many of Defendant Arthur's alleged actions resemble the actions of defendants in the cases above. For example, in *Weiss*, the defendant allegedly placed "I love you" signs in the plaintiff's work area and asked her out on dates. *Weiss*, 990 F.2d at 337. Defendant Arthur allegedly told Plaintiff he loved her and repeatedly asked her out on dates. Defendant Arthur also made brief physical contact with Plaintiff on one occasion when he grabbed her belt and their bodies touched for an instant before she jerked away.[5] While the Court finds that, as in the cases above, Defendant Arthur's actions were objectively "boorish and offensive" as well as immature and annoying, Defendant Arthur's actions were not more severe and were, in fact, less severe than the actions in these other cases.

Plaintiff argues that Defendant Arthur's actions need not be very severe, because they were pervasive. Indeed, the Fifth Circuit has held that a Plaintiff need not establish that harassing conduct was both severe *and* pervasive. *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434-35 (5th Cir. 2005). A one time incident, if severe enough, can constitute grounds for an actionable harassment claim.

---

[5]Although the Court notes that the one-time grabbing of Plaintiff's belt and the brief contact when Defendant Arthur pulled her to him was arguably less severe than the touching of buttocks in *Hockman* and *Jones* or the repeated touchings in *Shepherd*.

*Id.* at 435.  It therefore stands to reason that if the harassment is frequent enough, it may also establish grounds for an actionable harassment claim.  As Plaintiff points out, other courts have recognized an inverse relationship between the severity of the conduct and its frequency.  *Accord Ellison v. Brady,* 924 F.2d 872, 878 (9th Cir. 1991)(holding that the required showing of the harassing conduct varies inversely with the conduct); *Wilson v. Southern Nat'l Bank of North Carolina, Inc.*, 900 F.Supp. 803, 809 (holding that the more pervasive the conduct, the less severe it need be to be actionable).  While the Court recognizes this standard, it also reiterates the Supreme Court standard that no single factor is determinative when deciding if the harassment it actionable.  *Harris*, 510 U.S. at 23.  As stated earlier, a Court should look at several factors characterizing the harassment, including: (1) the frequency (2) the severity (3) whether the conduct was physically threatening or humiliating or merely an offensive utterance; (4) whether the harassment unreasonably interfered with the victim's work performance; and (5) whether the harassment undermined the victim's workplace competence.  Frequency of the harassment is only one factor.  Courts must look at "all of the circumstances" to determine if the Plaintiff has a case for actionable harassment.  *Id.*

There is no doubt that taking Plaintiff's allegations as true, Defendant Arthur's calls to Plaintiff, averaging 10-15 times per night, were quite frequent over the four

month period she worked at TDCJ.  However, Plaintiff herself admits that not all of the calls were harassing in nature.  Some calls were about Defendant Arthur's horses or his wife and children.  The mere frequency of the calls, even if the majority consisted of conversations Plaintiff found harassing (notwithstanding this Court's finding that they were objectively not very severe) coupled with the one incident of physical contact, are simply not enough to sustain a claim of actionable sexual harassment as a matter of law.

Moreover, despite Plaintiff's allegations of a hostile work environment, Plaintiff only complained to a supervisor once prior to her resignation, when she told Sergent Kroll that Defendant Arthur was calling her.  She never told the warden, asked for a transfer, complained to Human Resources or to the EEO until the day she resigned, even though she was informed about all of these options when she began working at the TDCJ.  While Plaintiff's failure to follow up on her complaint to Sergent Kroll or to file a formal complaint with the EEO do not automatically negate a claim of harassment, it is a factor weighing against Plaintiff's subjective perception of the severity or pervasiveness of the harassment.

Further, Plaintiff admits that Defendant Arthur's conduct did not undermine her workplace competence.  In fact, during her deposition, she stated that she was always able to perform her duties.  Again, this factor, while not determinative, does

11

weigh against a finding of actionable harassment.

After examining the totality of the circumstances and the facts under the nonexclusive factors set out by the Supreme Court in *Harris* and the Fifth Circuit in *Butler*, the Court finds that Defendant Arthur's conduct was not severe or pervasive enough to affected a "term, condition or privilege of the employment."  Because this fourth element is not satisfied, there is no need for the Court to examine the fifth element, that is, whether the employer knew or should have known of the harassment and failed to take prompt remedial action.  Summary judgment is therefore granted to Defendant TDCJ.

B.     Section 1983 Claim Against Rodrick Arthur

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[6]  *Leffall v. Dallas Indep. Sch. Dist.* 28 F.3d 521, 525 (5th Cir. 1994)(citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Defendant Arthur does not

---

[6]The statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

challenge that he was acting under color of state law when he allegedly harassed Plaintiff.  He does, however, argue that he did not violate the Plaintiff's constitutional rights, because his actions were not "severe or pervasive."  He also argues that for this reason, he is entitled to "qualified immunity."

Government officials performing discretionary functions are generally shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 603, 609 (1999)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Evett v. Detntff*, 330 F.3d 681, 687 (5th Cir. 2003).  The Supreme Court has stated that the doctrine, also known as qualified immunity, protects "all but the plainly imcompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To determine if qualified immunity applies, the Court must first determine whether Plaintiff has asserted a violation of a constitutional right. *Southard v. Texas Board of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997)(citing *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)).  If no constitutional right was violated, qualified immunity applies and the Court need not inquire further. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If a constitutional right is violated, the next inquiry is whether the Defendant could have reasonably, but mistakenly, believed that his conduct did not violate a

13

clearly established constitutional right. *Id.* at 202.

The Fifth Circuit has held that sexual harassment violates a constitutional right in the context of a Section 1983 claim. *Southard*, 114 F.3d at 550. Therefore, the question is whether Plaintiff has made an actionable claim for sexual harassment by Defendant Arthur. Sexual harassment claims under Section 1983 fall under the same standards that developed in Title VII litigation; therefore, the elements necessary to create a *prima facie* case under Section 1983 are the same as those necessary to create a *prima facie* case under Title VII. *Wright v. Rolette County*, 417 F.3d 879, 884-85 (8th Cir. 2005)*, cert denied*, 126 S. Ct, 1338 (2006); *see also Cervantez v. Bexar County Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996)(holding that on numerous occasions the Fifth Circuit has recognized that Section 1983 and Title VII are parallel causes of action); *Wallace v. Texas Tech. University*, 80 F.3d 1042, 1047 (5th Cir. 1996)(applying the same *prima facie* test to discrimination claims under Title VII and Section 1983).

Because the Court has already determined that Defendant Arthur's alleged acts of harassment were not severe or pervasive enough to create an actionable claim of sexual harassment under Title VII, the Court concludes the same under Section 1983. Therefore, Defendant Arthur has not violated a constitutional right and is entitled to qualified immunity. Defendant Arthur's motion for summary judgment is also

14

granted.

C.     Constructive Discharge Claim

Although not listed as a separate cause of action in Plaintiff's complaint,

Plaintiff argues in her opposition to Defendant TDCJ's motion for summary

judgment that she was constructively discharged from the TDCJ.  For Plaintiff to

prove constructive discharge, she must establish that the working conditions at

TDCJ "were so intolerable that a reasonable person would have felt compelled to

resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004); Webb *v.*

*Cardiothoracic Surgery Assoc. of N. Tex.*, 139 F.3d 532, 539 (5th Cir. 1998).  The

employee (Plaintiff) bears the burden of proving constructive discharge.  *Jurgens*

*v. EEOC,* 903 F.2d 386, 390 (5th Cir. 1990).  Allegations of harassment alone are

insufficient to constitute constructive discharge.  *See, e.g., Taylor v. Texas Dep't.*

*of Crim. Justice - Inst. Div.*, 2000 WL 528410, at *6 (N.D. Tex. May 1, 2000)(not

reported) (finding that harassment allegations alone did not support constructive

discharge claim).  To show constructive discharge in a sexual harassment case,

Plaintiff  must demonstrate a greater degree of harassment than that required to

prove a hostile working environment.  *Brown v. Kinney Shoe Corp.*, 237 F.3d 556,

566 (5th Cir. 2001)(internal citation omitted).  The Fifth Circuit requires certain

factors to justify a departure from the employer such as: (1) demotion; (2)

15

reduction in salary; (3) reduction in job responsibilities; (4) reassignment to

menial or degrading work; (5) reassignment to work under a younger, or less

experienced or less qualified supervisor; (6) badgering, harassment, or humiliation

by the employer calculated to encourage the employee's resignation; or (7) offers

of early retirement [or continued employment on terms less favorable than the

employee's former status]. *Id.* Plaintiff relies solely on the sixth factor alleging

that "Defendant/Supervisor Arthur's misconduct was sufficiently severe or

pervasive to support a viable constructive discharge claim." She also states that

she was "devastated" by the sexual harassment and that she "was treated so bad

and was so devastated that her resignation amounted to a constructive discharge."

The Court has already found that Defendant Arthur's conduct was not enough to

create a hostile working environment. Because Plaintiff  must demonstrate a

greater degree of harassment than that required to prove a hostile working

environment, the claim of constructive discharge cannot survive. *See id.* Further,

these conclusory allegations do not, without more, raise a triable issue of material

fact as to constructive discharge.

## IV.   CONCLUSION

In accordance with the Court's previous order (Doc. #51), after careful

review and consideration, and for the above reasons, the Court finds that Motion

for Summary Judgment of Co-Defendant, Texas Department of Criminal Justice

Institutional Division should be granted in all things.  The Court also finds that

Defendant Rodrick Arthur's Motion for Summary Judgment Based on Qualified

Immunity should be granted in all things.  In light of the Court's dismissal of any

federal claim against Defendant Arthur, the Court respectfully declines to exercise

supplemental jurisdiction, under 28 U.S.C. § 1367, over Plaintiff's state-law

claims against Rodrick Arthur.  It is therefore

ORDERED, ADJUDGED and DECREED that Motion for Summary

Judgment of Co-Defendant, Texas Department of Criminal Justice Institutional

Division (Doc. #29) is in all things GRANTED.  Plaintiff's claims against

Defendant Texas Department of Criminal Justice Institutional Division are hereby

DISMISSED WITH PREJUDICE.  It is further

ORDERED, ADJUDGED and DECREED that Defendant Rodrick Arthur's

Motion for Summary Judgment Based on Qualified Immunity (Doc. #28) is in all

things GRANTED.  It is further

ORDERED, ADJUDGED and DECREED that Plaintiff's Texas state law

claim against Defendant Rodrick Arthur for assault and battery is hereby

DISMISSED, as the Court declines to exercise jurisdiction over the claim.

17

Plaintiff's claims against Defendant Rodrick Arthur are hereby DISMISSED WITH PREJUDICE.

All other motions not ruled on prior to this order are hereby DENIED as MOOT.

It is SO ORDERED.

**SIGNED this 31st day of October, 2006.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE